UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MICHELLE MARIE LEFEBRE,
PERSONAL REPRESENTATIVE OF THE
ESTATE OF SHELLSEA BLAIR LEFEBRE-SCHIEL,

        Plaintiff,

       -vs-

REMINGTON ARMS COMPANY, LLC.

        Defendant.

Case No. 2:17-cv-00152-GJQ-TPG

Hon. Gordon J. Quist

---

Leonard A. Siudara (P20542)
Leonard A. Siudara PC
Attorneys for Plaintiff
5865 Andover Ct.
Troy, MI  48098
(248) 417-7300
budatlaw@msn.com

Edward P. Perdue (P55888)
Dickinson Wright PLLC
Attorneys for Defendant
200 Ottawa Avenue, NW, Ste. 1000
Grand Rapids, MI  49503
(616) 458-1300
eperdue@dickinsonwright.com

Dale G. Wills
James B. Vogts
Swanson, Martin & Bell LLP
Attorneys for Defendant
330 N. Wabash, Ste. 3300
Chicago, IL  60611
(312) 321-9100
dwills@smbtrials.com
jvogts@smbtrials.com

---

## REMINGTON'S BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

**Oral Argument Requested**

Defendant, Remington Arms Company, LLC ("Remington"), submits this brief in support of its *Motion to Dismiss Plaintiff's First Amended Complaint* pursuant to Federal Rule of Civil Procedure 12(b)(6).

## I.   INTRODUCTION

This product liability action arises from the tragic shooting death of Shellsea Lefebre-Schiel.  She was shot and killed as the result of criminal acts committed by her father, Jose Lefebre, who illegally transported a loaded Remington rifle in his motor vehicle—in violation of the criminal law—with the safety disengaged and recklessly pointed at his daughter just a few feet away. Plaintiff's claim that the rifle discharged accidentally because of an alleged manufacturing defect does not save her case because under the Protection of Lawful Commerce in Arms Act ("PLCAA"), Lefebre's admitted criminal misuse of the allegedly defective rifle is deemed the sole proximate cause of the shooting and Plaintiff's damages.

The PLCAA generally prohibits causes of action against firearm manufacturers and sellers for damages resulting from the criminal or unlawful misuse of firearms. 15 U.S.C. § 7901 *et seq.* Application of the PLCAA is a threshold matter that courts are to address at the earliest stages of litigation.  *Jefferies v. District of Columbia*, 916 F. Supp. 2d 42, 44 (D.D.C. 2013) (immunity from civil lawsuits, such as those afforded to firearm manufacturers, is a threshold question of law appropriately decided under Fed. R. Civ. P. 12(b)(6)).  The PLCAA creates immunity from the burdens of litigation and expressly states that prohibited causes of action "may not to be brought" in any federal or state court. 15 U.S.C. §7902(a).[1]

---

[1]    On October 10, 2017, Remington filed its Motion to Dismiss Plaintiff's Complaint and Brief in Support of its motion. (ECF 7 & 8.) Plaintiff responded to the merits of Remington's Motion to Dismiss on November 28, 2017. (ECF 23.) Plaintiff had earlier responded to Remington's Motion to Dismiss on November 16, 2017, by filing a Motion to Seek Leave to File First Amended Complaint (ECF 13.) together with a proposed First Amended Complaint. (ECF 12.) Remington opposed Plaintiff's Motion to Seek Leave to File and filed its Brief in Opposition, arguing that the amended pleading was futile because it did not change the

The broad immunity created by the PLCAA is subject to exceptions. 15 U.S.C. § 7903(5). One exception is a product liability action for personal injury or wrongful death damages resulting from an alleged design or manufacturing defect in a firearm. 15 U.S.C. § 7903(5)(A)(v).  However, the product liability exception is subject to an exception of its own: when the discharge of the firearm is the result of a "volitional act" that constitutes "a criminal offense," the criminal act "shall be considered the sole proximate cause" of resulting personal injuries or death. *Id.*  In that circumstance, the PLCAA prohibits a product liability action against the manufacturer of an alleged defectively designed or manufactured firearm as a matter of law.

The PLCAA reflects a policy decision by Congress to protect firearm manufacturers from having to litigate wrongful death and personal injury claims in which a third party criminally misuses a firearm—even if the firearm is alleged to have been *manufactured defectively*. However, Plaintiff asks this Court to ignore congressional intent to provide manufacturers with immunity under these circumstances.  She presses for an interpretation of the product liability exception that eliminates manufacturer immunity for criminal firearm misuse in product liability actions based on alleged manufacturing defects. The Court should reject Plaintiff's argument because it disregards the plain language of the statute and violates basic rules of statutory construction.

## II.    PLAINTIFF'S ALLEGATIONS

The shooting occurred during a hunting trip on Drummond Island in the Upper Peninsula. (First Amended Complaint ("FAC") at ¶28.)  Lefebre began the day hunting alone in his "four-door pick-up" truck.  (*Id.* at ¶31; Complaint.)  He hunted with a Remington Model 700 bolt-

---

fundamental factual allegations and law on which Remington based its Motion to Dismiss the original Complaint.  (ECF 25.) The Court, however, granted Plaintiff's Motion to Seek Leave to File the First Amended Complaint and gave Remington 28 days (until January 10, 2018) to file a "supplemental brief" in support of its motion to dismiss. (ECF 28.)  Pursuant to the Court's order, Remington files this brief in support of its Motion to Dismiss Plaintiff's First Amended Complaint.

action rifle, which he had purchased three years earlier. (*Id.* at ¶ 7, 31.) Lefebre loaded a round in the chamber, and allegedly placed the manual safety in the "safe" position. (*Id.* at ¶31.) He then "positioned" the rifle in his truck with the "buttstock" on the front passenger side "floorboard" and "the barrel resting on the right-front passenger window." (*Id.*) [2]

Later that day, Shellsea and two others joined Lefebre in his truck with the intention of driving to town for lunch. (FAC at ¶ 33.) Nathan Ernst sat in the front passenger seat. (*Id.*) Shellsea and another child sat in the rear passenger compartment. (*Id.*) The loaded rifle's buttstock remained on the passenger side floorboard but was now positioned between Ernst's left leg and an interior vehicle panel with the muzzle pointed "aft" toward the rear passenger compartment where Shellsea and the other child sat. (FAC at ¶ 34.) The passenger side floorboard of the truck where the rifle sat was a "cluster" of loose items and material. (Chippewa County Sheriff Incident Report 14-0041552 at p. 4 attached as **Exhibit A**.) Photos of where the rifle sat "show how much congestion and loose items and material" were around the rifle's trigger, including "fanny packs and a rat's nest of charging cords for cell phones [and] tom tom devices." (*Id.*) [3]

---

[2]     In the original Complaint, Plaintiff pleaded more detail regarding the shooting, including that the manual "safety lever" caught on a phone charging cord and moved from the "safe" position to the "fire" position before Shellsea got into the truck. (Compl. at ¶16.) Plaintiff also alleged that either the same "tangled power cord" or a "jarring of the vehicle" might have caused the rifle to discharge toward the rear passenger compartment where Shellsea sat. (Compl. at ¶¶19, 21.) Allegations that Plaintiff made in her original Complaint but omitted in her amended pleading remain part of this case as evidentiary admissions against interests. *See Shell v. Parrish*, 448 F. 2d 528, 530 (6th Cir. 1971); *Pennsylvania R. Co. v. City of Girard*, 210 F.2d 437, 440 (6th Cir. 1954) (factual allegation "eliminated" in an amended pleading are admissions against the pleader).

[3]     Plaintiff refers to the Chippewa County Sheriff's Office investigation of the shooting in the First Amended Complaint and purports to quote directly from the Sheriff's Office investigation report. (FAC at ¶36.) In doing so, Plaintiff has adopted the investigation report by reference. The report is part of Plaintiff's pleading and the Court may consider it in deciding Remington's Rule 12(b)(6) motion. *See Basset v. Nat'l Collegiate Athletics Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

4

Lefebre told the Chippewa County Sheriff's Office that when the rifle discharged he was "looking for something where the gun was and that is when it went off." (*Id.* at p. 5.) As Lefebre made this statement, "he used his right hand to motion as if he was reaching down to his right … where the gun was located" when it discharged. (*Id.*) After the shooting, the Sheriff's Office found one of the charging cords in the cluster of loose items and material severed. (*Id.*) The Sheriff's Office found the location at which the cord was severed "significant" because the "ferrite bead" on the cord "would have been located, prior to discharge, at nearly the exact location at which the trigger guard would have been," and it was "small enough to fit into the trigger assembly." (*Id.*)

The Chippewa County prosecutor charged Lefebre with Felony Manslaughter, in violation of M.C.L. § 750.321, and Transportation or Possession of a Loaded Firearm in or upon a Vehicle, in violation of M.C.L. § 750.227c. (*See* Information, Case No. 2014001347, 91st Judicial District, State of Michigan, attached as **Exhibit B**.) Lefebre ultimately pleaded guilty to two criminal offenses: attempted Careless, Reckless or Negligent Use of a Firearm Resulting in Death or Injury to a Person, in violation of M.C.L.A. § 752.861, and attempted Transportation or Possession of Loaded Firearm in or upon a Vehicle, in violation of M.C.L. § 750.227c. (*See* Certified Transcript of February 13, 2017 Plea Hearing, 91st District Court, State of Michigan, attached as **Exhibit C**.) [4]

---

[4]     The Court may take judicial notice of these public court records and criminal convictions in deciding Remington's motion to dismiss. *See Tellabs, Inc. v. Maker Issues & Rights, Ltd.*, 551 U.S. 308, 333 (2007) ("[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular … matters of which a court may take judicial notice."); *Rodic v. Thistledown Racing Club, Inc.*, 615 F.2d 736, 738 (6th Cir. 1980) ("Federal courts may take judicial notice of proceedings in other courts of record."); *Great American Ins. Co. v. Geostar Corp.*, 2010 WL 845953, *17 (E.D. Mich. Mar. 5, 2010) (judicial notice taken of guilty pleas to criminal charges in another court); *Michigan Bell Tel. Co. v. Strand*, 26 F.Supp. 993, 996 (W.D. Mich. 1998) (J. Enslen) (outcomes of other court proceedings that are regularly and officially recorded may be judicially noticed).

### III.     THE PLCAA PROHIBITS PLAINTIFF'S CAUSES OF ACTION.

#### A.     Standard of Review

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a case where the complaint fails to state a claim upon which relief can be granted. The Court must construe the complaint in the light most favorable to the plaintiff, accept its factual allegations as true, and draw all reasonable inferences in favor of the plaintiff. *DirectTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). Factual allegations, however, must be sufficient to raise a right to relief above the speculative level. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007). A plaintiff's allegations, must do more than create a "suspicion of a legally cognizable cause of action; they must show entitlement to relief." *LULAC v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007). The Court is not bound to accept legal conclusions couched as factual allegations. *Twombly*, 550 U.S. at 555.

#### B.     The PLCAA Broadly Prohibits Causes of Action for Damages Resulting from the Criminal or Unlawful Misuse of Firearms.

The PLCAA requires dismissal of claims that meet the definition of a "qualified civil liability action." 15 U.S.C. § 7902(a). Congress defined a "qualified civil liability action" as follows:

> The term "qualified civil liability action" means a civil action or proceeding or an administrative proceeding brought by any person against a manufacturer or seller of a qualified product, or a trade association, for damages, injunctive or declaratory relief, abatement, restitution, fines, or penalties, or other relief, resulting from the criminal or unlawful misuse of a qualified product by the person or a third party.

15 U.S.C. § 7903(5)(A). A "qualified product" includes "firearms as defined in subparagraph (A) or (B) of section 921(a)(3) of title 18." 15 U.S.C. § 7903(4). Section 921(a)(3), in turn, defines a "firearm" to include "any weapon … which will or is designed to or may readily be converted to expel a projectile by the action of an explosive." 18 U.S.C. § 921(a)(3). The PLCAA defines

6

an "unlawful use" as "conduct that violates a statute, ordinance, or regulation as it relates to the use of a qualified product." 15 U.S.C. § 7903(9).

A "qualified civil liability action may not be brought" in any state or federal court, 15 U.S.C. § 7902(a), subject to certain enumerated exceptions. One exception to immunity is a traditional product liability action. 15 U.S.C. § 7903(5)(A)(v). However, a product liability action may not proceed if the discharge of the firearm can be attributed to a volitional criminal act. In this circumstance, the criminal act is the sole proximate cause of the plaintiff's damages:

> [A]n action for death, physical injuries or property damage resulting directly from a defect in design or manufacture of the product, when used as intended or in a reasonably foreseeable manner, except that when the discharge of the product was caused by a volitional act that constituted a criminal offense, then such act shall be considered the sole proximate cause of any resulting death, personal injuries or property damage.

*Id.* The PLCAA does not limit criminal or unlawful misuse to specific intent crimes. *Adames v. Sheahan*, 909 N.E.2d 742, 761 (Ill. 2009) *cert denied*, 129 S. Ct. 1579 (2009). It does not matter that there was an absence of intent to discharge the firearm, or that there was no criminal conviction. *Id.* at 762-63. The "relevant inquiry is whether the misuse" of the firearm "was criminal or unlawful." *Id.* [5]

Here, Lefebre chose to load the rifle and illegally transport it in his truck in violation of M.C.L. § 750.227c. He also chose to place the loaded rifle in the cluttered front passenger compartment of his truck, and position the rifle without the safety engaged so that it pointed toward the rear passenger compartment, where two children sat in violation of M.C.L.A. §

---

[5]     Every federal and state appellate court that has addressed the constitutionality of the PLCAA has found it constitutional. *See, e.g., City of New York*, 524 F.3d 384, 392-98 (2d Cir. 2008), *cert denied*, 129 S. Ct. 3320 (2009); *Ileto v. Glock*, 565 F.3d 1126, 1138-42 (9th Cir. 2009), *cert denied*, 130 S. Ct. 3320 (2010); *District of Columbia v. Beretta U.S.A. Corp.*, 940 A.2d 163, 172-82 (D.C. 2008), *cert denied*, 129 S. Ct. 1579 (2009); *Estate of Kim ex rel v. Coxe*, 295 P.3d 380, 388-92 (Alaska 2013); *Adames*, 909 N.E.2d at 764-65 (Ill. 2009).

752.861. The unfortunate choices Lefebre made that day were volitional and admittedly criminal, and they resulted in Shellsea's tragic death.[6]

Those who transport firearms are "responsible for their safe transportation, protecting those inside and outside the vehicle against the dangers of discharge." *People v. Quinn*, 440 Mich. 178, 194 (1992) ("The duty imposed by [section 750.227c] is the duty to protect the public safety by guarding against the fortuity of accidental or unintentional discharge. The person who transports a firearm in a vehicle, the person who possesses a firearm in a vehicle, must inspect the firearm and, if loaded, must unload it."). The choices Lefebre made that day had a direct impact on the safety of the persons in his truck. His guilty pleas conclusively establish the criminality of his actions.[7]

---

[6]    Black's Law Dictionary defines volition as: "1. The ability to make a choice or determine something. 2. The act of making a choice or determining something. 3. The choice or determination that someone makes." Black's Law Dictionary 1605 (8th ed. 2004). The choices made by Lefebre that day were undeniably volitional. Plaintiff concedes this point by alleging that Lefebre contemplated but did not choose to "unload and case the rifle" so that the risk of unintentional discharge to his passengers did not exist. (FAC at ¶34).

[7]    Plaintiff alleges that the rifle discharged because it had a manufacturing defect, claiming that Remington used excessive Loctite (a screw thread locker) in the manufacturing process, which caused a "precipitous" engagement of the trigger and sear. (FAC at ¶¶ 38-42.) In April 2014, Remington recalled certain Model 700 rifles with X-Mark Pro triggers because it determined that it had manufactured *some of the recalled rifles* improperly and, under certain conditions, those rifles could unintentionally discharge. (*See* Product Safety and Recall Notice, attached as **Exhibit D**.) However, following the occurrence in this case, Remington examined Lefebre's rifle at the request of the Chippewa County Sheriff's Office and determined that the rifle was *not* among the limited number of rifles that had the manufacturing defect and was therefore not susceptible to an unintentional discharge. Regardless, whether the subject rifle was one that had the alleged manufacturing defect is immaterial to application of the PLCAA exception for product liability actions. Operation of the sole proximate cause exception presumes the existence of a design or manufacturing defect. *See R.S. ex rel. Sims v. Bd. Of School Directors*, 2006 WL 757816, *9 (E.D. Wis. Mar. 22, 2006) ("[I]mmunity presupposes negligence and has no reason for existence without it." (citation omitted)). The question under the PLCAA is whether a volitional criminal act renders the alleged defect non-actionable.

C.     **The Rules of Statutory Construction Require Dismissal of Plaintiff's Case.**

The PLCAA was a legislative response to lawsuits against firearm manufacturers seeking damages and other relief based on a variety of theories, including public nuisance, negligent distribution and product liability. In many of these lawsuits, the manufacturers' liability was premised on alleged tortious distribution of well-designed and legally manufactured firearms. Courts dismissed many of these lawsuits on common law grounds, but some survived. Congress stepped in and provided broad immunity to firearm manufacturers because it considered the continued prosecution of these cases and others an unreasonable burden on commerce and a threat to a number of core constitutional rights and principles. *See generally* 15 U.S.C. § 7901(b).

Plaintiff places considerable emphasis on what motivated a congressional majority to enact the PLCAA, and argues that the PLCAA provides immunity only when "harm is solely done by a firearm functioning as designed and intended." (ECF 23 at 16.)  Legislative remedies, however, often go beyond the specific ill that prompted the statute, and the expression of a specific purpose will not limit a broader application provided by the operative text. A. SCALIA, READING LAW, THE INTERPRETATION OF LEGAL TEXTS at 219 (2012). Thus, the scope of the PLCAA's protections is not defined narrowly by what lead to its enactment but by the words of the statute itself, specifically whether a cause of action—as it has been pleaded—falls within the definition of a "qualified civil liability action." 15 U.S.C. § 7903(5). [8]

(i)     **The Plain Meaning of the Language Used in the PLCAA Controls its Interpretation.**

Statutory construction begins with the "assumption" that the ordinary meaning of the language used by the legislature "accurately expresses legislative purpose." *Gross v. FBL*

---

[8]     Plaintiff causes of action are negligence, breach of implied warranty of merchantability, breach of express warranty, violation of the Michigan Consumer Protection Act, violation of the Magnuson Moss Act, and a claim for exemplary damages.

*Financial Servs., Inc.*, 557 U.S. 167, 175 (2009). The plain language of a statute is "the starting point for interpretation, and it should also be the ending point if the plain language is clear." *Michigan Flyer LLC v. Wayne County Airport Authority*, 860 F.3d 425, 428 (6th Cir. 2017) citing *United States v. Choice*, 201 F.3d 837, 840 (6th Cir. 2000); *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997) (inquiry into legislative intent must cease if statutory language is unambiguous). Plaintiff disregards this fundamental rule of statutory construction.

The PLCAA's product liability exception to immunity is clear: firearm manufacturers do not have immunity in a product liability action based on an alleged manufacturing defect, *unless* the injury can be causally attributed to a volitional criminal act. 15 U.S.C. § 7903(5)(A)(v). Although this language plainly permits a cause of action in which a defectively manufactured firearm discharges and "directly" causes harm, it just as plainly prohibits a cause of action in which a defectively manufactured firearm is misused criminally to cause an injury. *Id.* In this circumstance, the alleged manufacturing defect did not "directly" cause harm under the product liability exception. Congress, as a policy matter, decided that the criminal misuse would supersede the alleged defect and be "considered the sole proximate cause of any resulting death, personal injuries or property damage." *Id.*[9]

The language Congress used cannot be interpreted differently without ignoring its words entirely. A cardinal principle of statutory construction is that statutes are construed so that no clause, sentence or word shall be superfluous, void or insignificant. *TRW v. Andrews*, 534 U.S. 19, 31 (2001) (citations omitted). Courts are to give full effect, if possible, to every word

---

[9]     The "sole proximate cause" exception to the PLCAA product liability exception is consistent with the common law recognition that a third person's criminal act can serve as a superseding cause, relieving a defendant from liability for its negligent conduct. *See* Restatement of Torts (2d) § 448. Whether a defendant's responsibility extends to protect a plaintiff from criminal acts is largely a policy question. PROSSER & KEETON, THE LAW OF TORTS (5th ed.) § 44, pp. 311-13. Here, Congress decided that a subsequent criminal act would relieve a firearm manufacturer from having to defend itself against an allegation that it manufactured a defective firearm because immunity served policy interests Congress deemed important.

Congress uses. *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979). Congress plainly provided an exception to PLCAA immunity in actions based on manufacturing defects, and just as plainly described the circumstances under which a manufacturing defect claim is preempted. The Court should reject Plaintiff's interpretation of the criminal misuse exception to the PLCAA's product liability exception because it voids the phrase "defect in ... manufacture of the product" entirely.

The Court should presume that Congress knew the effect its language would have on a product liability action based on an alleged manufacturing defect. *See Vander Boegh v. EnergySolutions, Inc.*, 772 F.3d 1056, 1061 (6th Cir. 2014) (Courts are to presume that Congress intended a term or phrase to have its settled common law meaning unless the statute clearly indicates otherwise.). "Manufacturing defect" has well-understood meaning under Michigan product liability law and the law in other jurisdictions. A "manufacturing defect" occurs when "something goes wrong in the manufacturing process and the product is not in its intended condition." *Prentiss v. Yale Mfg. Co.*, 321 Mich. 670, 683 (1984) (drawing distinction between product design defects and product manufacturing defects); *see also Johnson v. Black & Decker (U.S.), Inc.*, 408 F.Supp.2d 353, 357 (E.D.Mich. 2005) ("[A] manufacturing defect alleges that a product's defect or malfunctioning was caused by some imprecision in the manufacturing process."). Congress surely understood the meaning of "defect in ... manufacture of the product" when it enacted the PLCAA, and it provided immunity to firearm manufacturers when a criminal uses a firearm that is alleged to have malfunctioned.

Plaintiff's bases each of her causes of action—including her failure to warn claim—on the allegation that an alleged manufacturing defect was present in the rifle. But no matter how vigorously Plaintiff argues that Remington defectively manufactured the rifle, the shooting was a foreseeable consequence of Lefebre's admitted criminal acts, and Remington has immunity from

having to defend itself against Plaintiff's claims.[10]

### (ii)  The Preamble to the PLCAA Does Not Control Interpretation of a Statute's Operative Provisions.

Lacking support in the PLCAA's plain language, Plaintiff turns to the statute's preamble and argues incorrectly that the PLCAA immunity exists only if a "two-part test" is met: (1) the injury must be "solely" caused by a criminal or unlawful misuse of a firearm; and (2) the firearm must have functioned as it "designed and intended" by the manufacturer.  (ECF 23 at 15.)  However, the only "test" that must be met is whether a cause of action meets the definition of a "qualified civil liability action." 15 U.C.C. § 7903(5).  If the cause of action meets that definition, it "may not brought" in any court. 15 U.S.C. § 7902(a).

Plaintiff's so-called "two-part test" does not appear in the PLCAA's operative provision. *See* 15 U.S.C. § 7903(5) (defining a "qualified civil liability action"). Rather, the words "solely" and "designed and intended" appear in the preamble to the statute.  Courts are to look to preambles for evidence of legislative intent only if the text of a statute is ambiguous. *See e.g. Whitman v. American Trucking Ass'n, Inc.*, 531 U.S. 457, 483 (2001); *see also* 2A Sutherland, Statutes and Statutory Construction § 47.4 (7th ed. 2017) ("The preamble cannot control the enacting part of the statute in cases where the enacting part is expressed in clear, unambiguous terms."). Where there is no ambiguity in a statute's operative provision, the general language of a

---

[10]  As noted above, Lefebre's rifle was examined in the presence of law enforcement authorities and the condition that could lead to an accidental discharge without a trigger pull was not found. (ECF 8 at 4 n. 2.) Plaintiff argues to the contrary, and expended considerable effort in her earlier brief explaining her manufacturing defect claim. (ECF 23.) But whether the rifle was defectively manufactured is irrelevant to application of the "sole proximate cause" provision of the product liability exception. The manner in which Remington published its Product Safety Warning and Recall Notice is also irrelevant. Nevertheless, plaintiff incorrectly asserts that Remington published the Notice only on its website. (ECF 23 at 3, 4-5.) In truth, Remington also published the warning and notice in twenty-four domestic and fifty-six international firearm and outdoor sports magazines. Circulation data shows that the notice reached more than 12 million persons domestically.

preamble cannot be used to create an ambiguity. *Jogi v. Voges*, 480 F.3d 822, 834 (7th Cir. 2007).[11]

The product liability exception is not ambiguous. A product liability action based on a manufacturing defect is not preempted by the PLCAA, unless the injury resulting from the discharge was caused by an intervening criminal act. 15 U.S.C. § 7903(5)(A)(v). Under the rules of statutory construction, it is not important that an accidental discharge of a defectively manufactured firearm may occur under different circumstances than an accidental discharge of a firearm that "functioned as designed." The plain language of the operative provision controls. Despite the alleged presence of a manufacturing defect, the manufacturer has immunity against being sued for the defect if harm was caused by a superseding volitional criminal act.[12]

Courts have uniformly rejected similar attempts to use congressional findings and purposes to narrow the PLCAA definition of a "qualified civil liability action." For example, in

---

[11]     For similar reasons, statements made by individual legislators during congressional floor debates cannot create ambiguity and do not take precedent over the clear language of a statute's substantive provisions. *See Delana*, 486 S.W.3d at 322; *Estate of Kim*, 295 P.3d at 387. "Ordinarily, even the contemporaneous remarks of a single legislator who sponsors a bill are not controlling in analyzing legislative history." *Beck v. City of Cleveland*, 390 F.3d 912, 921 n. 3 (2004). Here, Senator Craig's statement that "[i]f a gun malfunctioned, then that kind of lawsuit, of course, would be allowed" is true as far as it goes. However, plaintiff's reliance on the Senator's statement as evidence of congressional intent to permit alleged "malfunction" cases to proceed even when a volitional criminal act contributes to the injury is misplaced. (ECF 23 at 21-22.)

[12]     There is no dispute that the PLCAA preempts a cause of action against a firearms manufacturer for wrongful death or personal injury damages arising from a criminal use of a properly functioning firearm. *See e.g., Jeffries v. District of Columbia*, 916 F. Supp. 2d 42 (D.D.C. 2013). There is clearly no exception in the PLCAA for such an action, and Congress's motivation in taking up firearm industry immunity was, in part, to put an end to such wasteful litigation. *See Adames v. Sheahan*, 800 N.E.2d 559, 586 (Ill. App. 2007) ("It is clear from the PLCAA and legislative history that ... Congress was primarily concerned with novel nuisance cases ... However, based on the plain language of the statute, plaintiffs must show that they fall within the exceptions to avoid the provisions of the act."). However, this Court must give effect to the words Congress chose to use in the operative provision defining a "qualified civil liability action," which plainly contemplates that some causes of action involving firearms that did not function as designed may be preempted.

*Estate of Kim v. Coxe*, 295 P.3d 380, 386-87 (Alaska 2013), the plaintiff argued that the phrase "resulting from the criminal or unlawful misuse" in section 7903(5)(A) must be read in light of the congressional finding that the PLCAA's "purpose" is to "prohibit causes of action … for harm *solely* caused by criminal or unlawful misuse use of firearm products." *Id.* (emphasis added).  This construction would narrow the class of cases in which immunity is available to those where, as a factual matter, only the criminal could be blamed. The Alaska Supreme Court rejected this construction because it "would elevate the PLCAA's preamble over the substantive portion's clear language" and it would make "the enumerated exceptions" to immunity "meaningless." *Id.*; *accord Delana v. CED Sales, Inc.,* 486 S.W. 3d 316, 322 (2016); *Phillips v. Lucky Gunner LLC*, 84 F.Supp. 3d 1216, 1223 (D.Colo. 2015).

Similarly, in *Adames,* 909 N.E.2d 742, the court rejected the argument that section 7903(5)(A)(v) does not apply if the criminal act "was not the sole cause" of the injury. "The PLCAA does not require a finding that the volitional act constituting a criminal offense be the sole proximate cause of any resulting death." *Id.* at 764. The court in *Adames* based its conclusion on the plain language of section 7903(5)(A)(v), which states that "a volitional act that constituted a criminal offense … shall be considered the sole proximate cause of any resulting death." *Id.* The plain implication of the *Adames* court's interpretation of section 7903(5)(A)(v) is that there may be more than one cause of an accidental shooting in a product liability case, but when a cause is a volitional criminal act, neither a design nor a manufacturing defect claim can be brought.

### D.    Plaintiff's Allegations Do Not Fit within the PLCAA Product Liability Action Exception.

Regardless how plaintiff has labeled her causes of actions, they are all product liability actions based on an alleged product defect under Michigan law. *See* M.C.L. § 600.2945(h) ("'Product liability action' means an action based on a legal or equitable theory of liability

14

brought for the death of a person or for an injury to a person or damage to property caused by or resulting from the production of a product."). Each of the actions pleaded by plaintiff require proof of a product defect. *See Prentis v. Yale Manufacturing Co.,* 421 Mich. 670 683 (1984) ("[W]e require the plaintiff to prove that the product itself is actionable—that something is wrong with it that makes it dangerous. The idea of 'something wrong' is usually expressed by the adjective 'defective' and the plaintiff must, *in every case, in every jurisdiction*, show that the product was defective.") (emphasis in original); *see also Palatka v. Savage Arms, Inc.*, 2012 WL 12887774, *4 (W.D. Mich. Apr. 12, 2012) ("All of plaintiffs' claims—no matter how each is labeled—ultimately require sufficient proof of a design or manufacturing defect.").

In *Ryan v. Hughes-Ortiz*, 959 N.E.2d 1000 (Mass. App. Ct. 2012), the PLCAA was applied to prohibit the plaintiff's product defect claims against a firearm manufacturer based on negligence, implied warranty and deceptive trade practice theories of liability. The plaintiff's decedent, a convicted felon who could not legally possess firearms, stole firearms from the home of their owner, with whom the decedent was acquainted. The decedent was convinced to return the firearms to their owner's home and after he returned one of the firearms to its storage case, the firearm accidentally discharged. *Id.* at 1003. The plaintiff alleged that the storage case was defective and the cause of the unintentional discharge because the case had a post that required the firearm's trigger and trigger safety to be fully rearward in order for the firearm to fit in the case. *Id.* at 1006. Based on the physical evidence, the storage case post allegedly caused the firearm to discharge. *Id.* at 1006-07.

The court in *Ryan* held that the decedent's possession of the firearm constituted a "criminal or unlawful misuse" because of the decedent's felony conviction, and the case met the PLCAA definition of a "qualified civil liability action." *Id.* at 1008. The court specifically rejected application of the product liability exception to PLCAA immunity because the decedent

was guilty of a volitional act that constituted a criminal offense—unlawful possession of the firearm. *Id.* at 1008-09. The *Ryan* case stands for the proposition that a volitional criminal act— that will remove a case from the product liability exception and leave PLCAA immunity intact— can be the manner in which a firearm is possessed, stored and handled. The volitional act need not be pulling the trigger.

In *Adames*, the court addressed whether the PLCAA prohibited the plaintiffs' product liability action against a firearm manufacturer based on a failure to warn theory. There, a teenage boy unintentionally shot and killed a friend; wrongly believing the firearm was not loaded. 909 N.E.2d at 762. The plaintiffs alleged that the manufacturer failed to warn the boy that when he removed the ammunition magazine, the firearm would still discharge if a round is in the chamber and he pulled the trigger. *Id.* at 751.[13]

The court in *Adames* rejected the plaintiffs' argument that because the boy shot his friend accidentally, he did not "use" the firearm, and therefore the plaintiffs' causes of action were not "qualified civil liability actions." *Id.* at 762. The plaintiffs further argued that because there was no "use" of the firearm, the court could not find the boy's handling of the firearm a "criminal or unlawful misuse." *Id.* The court also rejected this argument. *Id.* The court further rejected the plaintiffs' argument that because the boy did not intend to fire the gun and did not understand the ramifications of his conduct, his actions were not volitional. The court focused on the choices the boy made—to point the firearm at his friend and pull the trigger—and that his choices and actions constituted criminal offenses. *Id.* at 763 ("The statute requires only that the volitional act

---

[13]     The Illinois Appellate Court had affirmed summary judgment for the manufacturer on the plaintiff's design defect claims in *Adames*. 909 N.E.2d at 759. The plaintiffs did not appeal the appellate court's ruling. Plaintiffs' failure to warn claim was the only claim the Illinois Supreme Court addressed under the PLCAA and the product liability exception. *Id.* at 760.

constitute a criminal offense.").[14] The *Adames* case thus stands for the proposition that the product liability exception does not apply to deprive a manufacturer of immunity merely because a volitional criminal act is unintentional.

Plaintiff misreads *Adames* to hold that the product liability exception can be defeated only when the volitional act is "the pulling of the trigger." (ECF 23 at 21.) That is not the holding in the case. Congress chose to limit the general term "volitional act" in only one respect: it must "constitute[] a criminal offense." 15 U.S.C. § 7903(5)(A)(v). If Congress intended a further limitation on the term, it would have provided it. *See* 2A Sutherland, Statutes and Statutory Construction § 47.20 (7th ed.2017) ("Courts should not presume a legislature restricted a general term *ejusdem generis* where there is no specific enumeration or if the terms supplementing the general term are themselves general.").

The only other appellate court decision in which the PLCAA product liability exception has been addressed is *Chavez v. Glock, Inc.*, 207 Cal. App. 4th 1283 (2012). In *Chavez*, the plaintiff, a police officer, placed his service firearm under the console of his truck when he returned home from duty. The next day, the officer, forgetting the firearm was in his truck, put his three-year old son in the truck's rear jump seat, where the child could apparently reach the firearm. The child picked up the firearm, and shot and injured his father. *Id.* at 1292.

The plaintiff sued the firearm's manufacturer based on alleged design defects and the manufacturer's alleged failure to warn. The manufacturer asserted immunity under PLCAA. It argued that the plaintiff's causes of action were "qualified civil liability actions" because they sought damages arising from the plaintiff's "criminal or unlawful misuse" of the firearm, specifically his unlawful "storage" of the firearm in violation of California Penal Code section 25100. *Id.* at 1316-17. The plaintiff contested the manufacturer's claim to immunity on a factual

---

[14]      A juvenile court found the boy guilty of involuntary manslaughter and reckless discharge of a firearm. *Adames*, 909 N.E. 2d at 761.

basis, arguing that he did not act criminally because he had not stored his service firearm at all but was "using it in a manner consistent with his training to provide protection while he was off duty." *Id.* at 1317.

The court in *Chavez* expressed "serious doubts" as to whether the plaintiff's case even met the threshold definition of a "qualified civil liability action" because the plaintiff may not have committed any act constituting a criminal offense. *Id.* Because there was a question of fact as to whether the plaintiff's decision to leave a loaded firearm in his truck was an unlawful storage of the firearm, the court denied the manufacturer's motion for summary judgment based on the PLCAA. The court in *Chavez* did not reach any conclusions as to: (a) whether the plaintiff's conduct could be a qualifying criminal act for purposes of PLCAA immunity, or (b) whether such conduct was a volitional criminal act resulting in discharge as contemplated by the product liability action exception to PLCAA immunity. *Id.* at 1318. The *Chavez* case therefore stands for nothing more than the proposition that the criminality of the act must be undisputed before it is "considered the sole proximate" cause of a plaintiff's damages. 15 U.S.C. § 7903(5)(A)(v).[15]

---

[15]    The court in *Chavez* questioned whether an alleged violation of the California safe storage law was the type of criminal act that Congress intended would "eliminate the exception" for product liability actions because such storage, even if criminal, can be "remote" from the actual discharge of the firearm.  207 Cal. App. 4th at 1317-18. This Court should not have such a concern here. Lefebre's criminal actions in this matter—leaving the firearm loaded with the safety disengaged and pointed directly at Shellsea while driving on a dirt road—were not in any sense "remote" from the discharge of the rifle. An accidental injury was a foreseeable consequence of his actions. Indeed, the specific purpose of the Michigan safe firearm transportation statute is to guard against "the fortuity of accidental or unintentional discharge" of loaded firearm in a moving vehicle, which is exactly what happened in this case. *Quinn*, 440 Mich. at 194. Moreover, under Michigan law, proximate cause need not be the "most immediate, efficient, and direct" factual cause of harm. *Ray v. Swager*, 2017 WL 3254724, *14 (Mich. July 31, 2017). Indeed, "[i]t is not uncommon that more than one proximate cause contributes to an injury." *Id.* at *8. Proximate cause "involves examining the foreseeability of consequences, and whether a defendant should be legally responsible for such consequences." *Id.* at *7. An act will be deemed a proximate cause of an injury when a person knows or should have known "by the

Plaintiff misreads *Chavez* to hold that "unlawful storage of the firearm in a vehicle" cannot be a volitional act for the purposes of section 7903(5)(A)(v). (ECF 23 at 20.) Although the court in *Chavez* expressed doubts that Congress intended for a remote, unlawful act in the causal chain to defeat the product liability exception, it did not hold that unlawful firearm storage could never be a volitional act that conferred immunity for the manufacturer. Rather, the court refused to find, as a matter of law, that the plaintiff police officer had unlawfully stored his firearm because he had "not conceded" unlawful storage and it was not "a foregone conclusion." *Chavez*, 207 Cal. App. 4th at 1318. Notably, the court did hold that the plaintiff's failure to put his child in car seat in violation of the California vehicle code was "not the kind of criminal offense supportive of immunity from product liability actions." *Id.* at n. 15.

### E.    An Accidental Firearm Injury Can Be the Result of a Volitional Act.

The case law addressing the PLCAA product liability exception holds that where there is no dispute that a volitional act was a criminal offense and the foreseeable consequence of the criminal act was the actual or potential discharge of a firearm, the act is the sole proximate cause of resulting damages.  The criminal actor need not have intended that his actions cause the firearm's discharge, and the criminal act need not have been the actual pulling of the firearm's trigger. The product liability exception reflects a legislative policy choice to protect firearm manufacturers from the burden of litigating product liability claims involving the criminal misuse of firearms.

Here, it is undisputed that Lefebre committed the criminal offenses to which he pleaded guilty. He illegally transported a loaded rifle in his truck in violation of criminal law, and he did so with a criminally reckless disregard for the safety of his passengers. He failed to unload the

---

exercise of reasonable foresight" that an injury "may result from his act" because "a subsequent occurrence, which is not unlikely to happen ... does happen." *Id.* at *8.

firearm when he finished hunting, he did not ensure that the rifle's safety remained engaged and he did not control the direction of the rifle's muzzle, instead allowing the loaded rifle to point directly at Shellsea in the cluttered truck while driving on a dirt road. The choices Lefebre made that day had consequences that were indeed tragic, but under federal law, his choices preclude Plaintiff's claim that an alleged product defect was a proximate cause of her damages.

Plaintiff argues that because the rifle discharged accidentally, it could not have been the result of a volitional criminal act. (ECF 23 at 18.) But the consequences of an act need not be intended for the act to be volitional. *Adames*, 909 N.E.2d at 762-63. For example, one can choose to drive an automobile in excess of the speed limit without intending for a crash to occur—but the choice to exceed the speed limit was volitional. Similarly, one can choose to transport a loaded firearm in a cluttered motor vehicle illegally with the safety not engaged and the muzzle pointed directly at a child—without intending that the firearm will discharge. Lefebre's conscious choices that day were criminally reckless, and they were not in any sense remote from the discharge of the rifle. Indeed, without regard to the PLCAA, the shooting could readily be found, as a factual matter, a foreseeable consequence of Lefebre's actions. *See Ray v. Swager*, 501 Mich. 52 (2017). Had Lefebre made different choices, Shellsea would not have died. As a policy matter, and under fundamental rules of statutory construction, Lefebre's illegal and criminally reckless actions were the sole proximate cause of his daughter's tragic death under the PLCAA product liability exception.

## IV.   CONCLUSION

Based on the foregoing, Remington Arms Company, LLC respectfully moves to dismiss the Plaintiff's First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

Respectfully submitted,

DICKINSON WRIGHT PLLC


By_____/s/Edward P. Perdue_____
    Edward P. Perdue
200 Ottawa Avenue, NW, Suite 1000
Grand Rapids, MI 49503
(616) 458-1300
eperdue@dickinsonwright.com


Dale G. Wills
James B. Vogts
Swanson, Martin & Bell LLP
330 N. Wabash, Suite 3300
Chicago, IL 60611
(312) 222-8517
dwills@smbtrials.com
jvogts@smbtrials.com

*Attorneys for Defendant*

Dated: January 10, 2018

## CERTIFICATE OF SERVICE

I hereby certify that on January 10, 2018, I caused the foregoing document(s) and this Certificate of Service to be electronically filed with the U.S. District Court by using the ECF System. I further certify that participants in the case are registered ECF users and that service will be accomplished by the ECF system.

DICKINSON WRIGHT PLLC

By  /s/ Edward P. Perdue
    Edward P. Perdue (P55888)
    200 Ottawa Avenue, NW, Suite 1000
    Grand Rapids, Michigan 49503
    (616) 458-1300

GRAPIDS 76841-1 483293v1