UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MICHELLE MARIE LEFEBRE,
PERSONAL REPRESENTATIVE OF
THE ESTATE OF SHELLSEA BLAIR
LEFEBRE-SCHIEL,

      Plaintiff,

v.

REMINGTON ARMS COMPANY, LLC,

      Defendant.
_____/

Case No. 2:17-CV-152

HON. GORDON J. QUIST

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO EXCLUDE PLAINTIFF'S LIABILITY EXPERTS AND FOR SUMMARY JUDGMENT**

Plaintiff, Michelle Marie Lefebre, sued Defendant, Remington Arms Company, LLC, alleging that Defendant's XMP Model 700 rifle had a manufacturing defect that caused the accidental death of her daughter. Defendant argues that Plaintiff's proffered liability experts, gunsmiths Tommy Burttschell and Don White, cannot properly offer opinion testimony that excess uncured or "sticky" Loctite 660 in the rifle's trigger mechanism caused the rifle to fire without a trigger pull, and that, without expert testimony to establish causation, Defendant is entitled to summary judgment. (ECF No. 104.) Plaintiff responds that her experts' testimony is admissible, and thus there is a genuine issue of material fact regarding causation.[1] (ECF No. 110.) Having

---

[1] Plaintiff filed her response to Defendant's motion on August 29, 2019, nearly two weeks past the deadline for submission of the response. *See* W.D. Mich. LCivR 7.2(c) (requiring a party opposing a dispositive motion to file a responsive brief within 28 days). Despite the untimely filing, the Court has considered Plaintiff's response. However, the Court declines to grant oral argument at Plaintiff's request because of the untimely filing and because the motion can be resolved on the briefing.

considered the parties' arguments, the Court finds that the testimony of Plaintiff's experts does not satisfy the requirements of Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S. Ct. 2786 (1993). As such, there remains no genuine issue of material fact regarding causation, and Defendant is entitled to judgment as a matter of law.

## I. BACKGROUND

The tragic shooting that killed Shellsea Lefebre occurred the morning of September 21, 2014, on Drummond Island in Michigan's Upper Peninsula. That morning, Shellsea's father, Jose Lefebre, was "road hunting" (hunting from his vehicle). At some point, he loaded a cartridge into the chamber of the rifle before he placed the rifle in the front passenger side compartment of his truck, but he does not recall whether the safety was in the "ON" or "OFF" position. (Lefebre Dep., ECF No. 104-6 at PageID.1082, 1088.) Later that morning, Jose picked up Shellsea and two friends, Nathan Ernst and his sister, Sarah, to drive into town for lunch. Shellsea sat in the back seat behind Jose, Nathan sat in the front passenger seat, and Sarah sat behind Nathan. (Ernst Dep., ECF No. 104-7 at PageID.1090.) When Nathan sat down, the rifle was between his left leg and the center console, pointing toward the back seat, and the front passenger compartment was cluttered with a backpack, phone chargers, and various hunting items. (*Id*. at PageID.1091.)

About five minutes into the drive, the rifle fired unexpectedly, striking Shellsea and killing her instantly. When the rifle discharged, Jose was driving and reaching for something on the floor near Nathan's legs. Jose claims that he was not touching the rifle when it discharged, and he does not remember whether the truck hit a bump in the road at the time of discharge. (Lefebre Dep., ECF No. 104-6 at PageID.1085-86.) He has no explanation for why the safety was in the "OFF" position when the rifle discharged. (*Id*. at PageID.1087.) Jose cannot explain how or why the rifle discharged as it did.

Plaintiff's experts opine that excess uncured Loctite 660 in the trigger mechanism caused the rifle to fire without a trigger pull when the safety was in the "OFF" position. In April 2014, Remington recalled XMP Model 700 rifles because it determined that some XMP trigger mechanisms could have excess, uncured Loctite 660, which could, under certain circumstances, cause the rifle to discharge accidentally. However, Remington maintains that the subject rifle did not have this defect.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini v. Oberlin Coll.*, 440 F.3d 350, 357 (6th Cir. 2006).

While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734–35 (6th Cir. 2005). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813–14 (6th Cir. 2006).

### III. ANALYSIS

For expert testimony to be admissible, it must comply with the requirements of Federal Rule of Evidence 702 and *Daubert*. Rule 702 provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

*Daubert* further requires that the Court engage in a two-part gatekeeping function in determining the admissibility of expert testimony. First, the Court must find that the testimony is reliable by "determin[ing] whether the principles and methodology underlying the testimony itself are valid." *Pride v. BIC Corp.*, 218 F.3d 566, 577 (6th Cir. 2000). Second, the Court must determine that the expert's testimony will assist the trier of fact. The "scientific testimony must 'fit' the facts of the case, that is, there must be a connection between the scientific research or test result being offered and the disputed factual issues in the case in which the expert will testify." *Id*. at 578.

Here, Plaintiff's proffered expert testimony does not pass muster. While Burttschell and White may be experienced gunsmiths, they are not qualified to opine on the allegedly defective condition of the subject rifle because they have not engaged in any testing—with the subject rifle or any other—and they have no knowledge of, or experience with, bonding agents like Loctite 660. "The issue with regard to expert testimony is not the qualifications of a witness in the abstract, but whether those qualifications provide a foundation for a witness to answer a specific question." *Berry v. City of Detroit*, 25 F.3d 1342, 1351 (6th Cir. 1994). The specific question in this case is

4

whether "sticky," uncured Loctite 660 caused the subject rifle to fire without a trigger pull, and neither of Plaintiff's experts is qualified to answer that question.

Burttschell testified that he has not tested Loctite 660 or its properties; he has not tested nor is he aware of any testing to determine the conditions under which Loctite 660 could cause a rifle to fire without a trigger pull; he does not know whether Loctite 660 can get "stickier" over time; and he does not know what effect MolyKote (the curing agent) has on Loctite 660. (Burttschell Dep., ECF No. 104-3 at PageID.977, 984-85.)

Similarly, White has no experience with Loctite 660 and no specialized knowledge of its properties; he has never used Loctite 660 or MolyKote; he has never conducted any testing of Loctite 660; he has no basis to determine whether the material found on the trigger face of the subject rifle was cured or uncured Loctite 660; and he cannot differentiate between Loctite 660 and MolyKote, two completely different substances.  (White Dep., ECF No. 104-5 at PageID.1027-28, 1044, 1054, 1060-61.)

Post-accident testing by Michigan State Police (MSP) and defense expert, Derek Watkins, could not duplicate the alleged defect.  White cannot recall having ever seen the subject rifle but confirms that he has never tested the subject rifle.  Burttschell tested the rifle but found that it fired only as intended—with a trigger pull while the safety was in the "OFF" position.  Thus, in testing, the rifle has never fired as alleged by Plaintiff, and Plaintiff's experts cannot say whether the subject rifle had any uncured Loctite 660.

Because there is no factual basis for Plaintiff's experts to testify that uncured Loctite 660 caused the subject rifle to fire without a trigger pull, their opinions on causation are inadmissible. *Rose v. Truck Centers, Inc.*, 388 F. App'x 528, 535 (6th Cir. 2010) ("An expert's conclusions regarding causation must have an established factual basis and cannot be premised on mere

5

suppositions.") *See also Tamraz v. Lincoln Elec. Co.*, 620 F.3d 665, 671 (6th Cir. 2010) (finding that expert testimony regarding what testing the expert *might* have done was not enough to render his causation opinion admissible when the expert could not testify to testing he had actually done); *Dow v. Rheem Mfg. Co.*, 527 F. App'x 434, 438 (6th Cir. 2013) (excluding expert testimony when expert did not conduct any testing to determine whether the condition *could* happen, let alone whether the condition happened in that instance).

Without expert testimony to establish causation—an essential element to all of Plaintiff's claims—summary judgment is appropriate. *See Avendt v. Covidien Inc.*, 262 F. Supp. 3d 493, 532 (E.D. Mich. 2017) (granting summary judgment to the defendant when the plaintiff could not provide admissible expert testimony on causation); *Green v. Jerome-Duncan Ford, Inc.*, 195 Mich. App. 493, 500, 491 N.W.2d 243, 247 (1992) (granting summary disposition to the defendant when the plaintiff could not offer expert testimony that the product was defective when it left defendant's control). Plaintiff argues that "[i]f the jury accepts [Jose] and [Nathan]'s testimony that the gun fired with no one touching it, intermittent precipitous trigger/sear engagement caused by excess Loctite 660 is the compelling explanation." (Pl. Resp., ECF No. 110 at PageID.1332.) However, neither Jose nor Nathan, as lay witnesses, can offer testimony regarding Loctite 660. *See* Fed. R. Evid. 701 (limiting lay witness testimony to opinions "rationally based on the witness's perception" and "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702"). Thus, there is no witness that can make the connection between Loctite 660 and the discharge of the subject rifle, and, therefore, Plaintiff cannot establish causation.

## IV. CONCLUSION

For the above reasons, Defendant's Motion to Exclude the Testimony and Opinions of Plaintiff's Liability Experts and Incorporated Motion for Summary Judgment (ECF No. 104) is

**GRANTED.** Plaintiff's claims are **DISMISSED WITH PREJUDICE.** This case is **concluded,** and a separate judgment will enter.

    **IT IS SO ORDERED.**

Dated: November 18, 2019                                                     /s/ Gordon J. Quist
                                                                        GORDON J. QUIST
                                                      UNITED STATES DISTRICT JUDGE